**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

JAMES N. SCOTT, et. al.,

                Plaintiffs,

       v.                                          No. 9:16-CV-403
                                                          (TJM/CFH)

D. UHLER; et al.,

                Defendants.

**APPEARANCES:**                        **OF COUNSEL:**

JAMES N. SCOTT
96-A-5363
Plaintiff pro se
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

ADARRYL DENDY
10-A-3012
Plaintiff pro se
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

KAVIN L. ROWE
14-B-1192
Plaintiff pro se
Wyoming Correctional Facility
P.O. Box 501
Attica, NY 14011

VELTON BENDER
15-A-0782
Plaintiff pro se
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

HAROLD GRANT
15-A-1961

Plaintiff pro se
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

SEAN SMITH
13-A-1433
Plaintiff pro se
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12585

UMAIR FAROOQ
14-A-1069
Plaintiff pro se
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

LAWRENCE JOHNSON
15-A-3729
Plaintiff pro se
Queensboro Correctional Facility
47-04 Van Dam Street
Long Island City, NY 11101

LAWRENCE ELLIOTT
a/k/a Lawrence Elliot
14-A-0864
Plaintiff pro se
Clinton Correctional Facility
P.O. Box 2000
Dannemora, NY 12929

HON. ERIC T. SCHNEIDERMAN           RYAN W. HICKEY, ESQ.
Attorney General for the             Assistant Attorney General
State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

Plaintiffs, inmates who were, at all relevant times, in the custody of the New York Department of Corrections and Community Supervision ("DOCCS"), bring this action pursuant to the Civil Rights Act, 42 U.S.C. § 1983. Dkt. No. 1 ("Compl."). Plaintiffs contend that defendants deprived them of their constitutional rights under the First and Fourteenth Amendments. See id. In lieu of an answer, defendants move, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6), to dismiss the complaint. Dkt. No. 45. Plaintiff James N. Scott ("Scott") opposed defendants' motion.[2] Dkt. No. 38, 40. For the following reasons, it is recommended that defendants' motion to dismiss be granted.

## I. Background

The facts are related herein in the light most favorable to plaintiffs as the non-moving party. See subsection II(A) infra. At the relevant time, plaintiffs were confined at Upstate Correctional Facility ("Upstate C.F."). Compl. at 5-6.

Plaintiffs allege that: (1) defendants violated their First Amendment rights to religious freedom; and (2) defendants violated their Fourteenth Amendment rights to due process and equal protection. See Compl., generally. On December 25, 2015, Plaintiffs were not permitted to attend regularly scheduled Jumm'ah services at Upstate C.F. Compl. at 5.[3]

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

[2] Scott, as a pro se litigant, "is not empowered to proceed on behalf of anyone other than himself." Khalil v. Laird, 353 F. App'x 620, 621 (2d Cir. 2009).

[3] Jumm'ah is a weekly group prayer that is obligatory for Muslims, and is the only Muslim congregational service of the week at Upstate C.F. Compl. at 5. Jumm'ah services are regularly scheduled at noon on Friday for general population inmates. Id.

Plaintiffs' requests regarding these services, including a specific request from Scott, the designated "inmate facilitator of the Islamic Religion" at Upstate C.F., went unanswered by correction staff. Compl. at 5. Plaintiffs were told only that staff needed to "check and inquire as to how the procedures were going to take place in such a specific day." Id. Defendant J. Fitchette ("Fitchette") was the Deputy Superintendent for Programs and responsible for "running the programs on Christmas day." Compl. at 4, 6. When Imam Qubaisy arrived at Upstate C.F. to perform the Jumm'ah service, defendant Lieutenant W. Trombly ("Trombly"), the watch commander, refused to allow Imam Qubaisy to enter the facility. Id. Trombly informed Imam Qubaisy that Fitchette cancelled services with approval from defendant Superintendent D. Uhler ("Uhler"). Id.

## II. Discussion[4]

Defendants move to dismiss the complaint arguing that Plaintiffs' First and Fourteenth Amendment claims fail to state a cause of action. See Dkt. No. 35, generally.

### A. Legal Standard

When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994). However, this "tenet . . . is inapplicable to legal conclusions[; thus, t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556

---

[4] All unpublished opinions cited to by the Court in this Report–Recommendation are, unless otherwise noted, attached to this Report–Recommendation.

U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (holding that "entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . [as] courts are not bound to accept as true a legal conclusion couched as a factual allegation.")).

To defeat a motion to dismiss or a motion for judgment on the pleadings, a claim must include "facial plausibility . . . that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556 (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct] .")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that, "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . .") (citations omitted).

Still, "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Twombly, 550 U.S. at 555 (citations omitted). While a complaint attacked under the standard set forth in Fed. R. Civ. P. 12(b)(6) does not require detailed factual allegations, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citations omitted).

Plaintiffs Dendy, Rowe, Bender, Grant, Smith, Farooq, Johnson, and Elliott failed to oppose the motion despite being warned of the consequences of failing to respond. Dkt. No. 36. However, "[a] plaintiffs failure to oppose a 12(b)(6) motion cannot itself justify

5

dismissal of a complaint." McCall v. Pataki, 232 F.3d 321, 322 (2d Cir. 2000) ("Such motions assume the truth of a pleading's factual allegations and test only its legal sufficiency.").

> [A]lthough a party is of course to be given a reasonable opportunity to respond to an opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law. If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a [Fed. R. Civ. P.] 12(b)(6) motion does not warrant dismissal.

Id. at 322-23.

## B. First Amendment Free Exercise Claim

Plaintiffs claim that defendants violated their religious rights when they prevented plaintiffs from attending Jumm'ah services on December 25, 2015. See Compl., generally. Defendants argue that plaintiffs' religious claims are subject to dismissal because precluding plaintiffs from attending one religious service did not amount to a substantial burden on their religious beliefs. Dkt. No. 35-1 at 5-6.

The First Amendment to the United States Constitution guarantees the right to free exercise of religion. U.S. CONST. amend. I; Cutter v. Wilkinson, 544 U.S. 709, 719 (2005). The Free Exercise Clause applies to prison inmates, subject to appropriate limiting factors. Ford v. McGinnis, 352 F.3d 582, 588 (2d Cir. 2003) ("Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause.") (citing Pell v. Procunier, 417 U.S. 817, 822 (1974)). This right is not absolute and can be limited due to the inmate's "incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and

6

institutional security." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (citations omitted). "The governing standard is one of reasonableness, taking into account whether the particular regulation . . . is reasonably related to legitimate penological interests." Benjamin v. Coughlin, 905 F.2d 571, 574 (2d Cir.1990) (citing Turner v. Safley, 482 U.S. 78 (1987)).

To assess a First Amendment Free Exercise claim, the Court must determine whether (1) the practice asserted is religious in the person's scheme of beliefs, and that the belief is sincerely held; (2) the challenged practice of the prison officials infringes upon the religious belief; and (3) the challenged practice of the prison officials furthers some legitimate penological objective. Farid v. Smith, 850 F.2d 917, 926 (2d Cir.1988) (citations omitted). "[A] prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." Salahuddin v. Goord, 467 F.3d 263, 274–75 (2d Cir. 2006) (citing Ford, 352 F.3d at 591).[5] A religious belief is "sincerely held" when the plaintiff subjectively, sincerely holds a particular belief that is religious in nature. Ford, 352 F.3d at 590. A prisoner's sincerely held religious belief is "substantially burdened" where "the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." Jolly v. Coughlin, 76 F.3d 468, 476–77 (2d Cir. 1996). Once a plaintiff establishes that a sincerely held religious belief has been substantially burdened,"[t]he defendants then bear

---

[5] The Second Circuit has yet to decide whether the "substantial burden" test survived the Supreme Court's decision in Emp't Div. v. Smith, 494 U.S 872, 887 (1990), in which the Supreme Court suggested that application of the test "puts courts in 'the unacceptable business of evaluating the relative merits of differing religious claims.'" Ford, 352 F.3d at 592 (quoting Emp't Div., 494 U.S. at 887); see also Williams v. Does, 639 F. App'x 55, 56 (2d Cir. 2016) ("We have not yet decided whether a prisoner asserting a free-exercise claim must, as a threshold requirement, show that the disputed conduct substantially burdened his sincerely held religious beliefs."); Holland v. Goord, 758 F.3d 215, 220-21 (2d Cir. 2014) (declining to decide whether a prisoner must show, as a threshold matter, that the defendants' conduct substantially burdened his sincerely held religious beliefs in connection with a First Amendment free exercise claim).

the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct; the burden remains with the prisoner to show that these articulated concerns were irrational."  Salahuddin, 467 F.3d at 275 (quoting Ford, 352 F.3d at 595) (punctuation omitted).

"[P]risoners have a constitutional right to participate in congregate religious services." Salahuddin v. Coughlin, 993 F.2d 306, 308 (2d Cir.1993) (citations omitted).  While the Second Circuit has accorded prison officials great deference in the administration and "responsibility of maintaining order in prisons, . . . prisoners should be afforded every reasonable opportunity to attend religious services, whenever possible."  Young v. Coughlin, 866 F.2d 567, 570 (2d Cir.1989) (citations omitted).  In the Second Circuit, courts have held that preclusion from attending two religious services is not, without more, a "substantial burden" on a plaintiff's free exercise of religion. Lopez v. Cipolini, 136 F. Supp.3d 570, 588 (S.D.N.Y. 2015) (citing Jean-Laurent v. Los, No. 12-CV-132, 2015 WL 1015383, at *6 (W.D.N.Y. Mar. 8, 2015)) (explaining that "[c]ourts within the Second Circuit have consistently held that missing two religious services does not pose a substantial burden on an inmate's religion"); Smith v. Graziano, No. 9:08-CV-469 GLS/RFT, 2010 WL 1330019, at *9 (N.D.N.Y. Mar. 16, 2010), report and recommendation adopted, 2010 WL 1332503 (N.D.N.Y. Apr. 6, 2010) (finding that the cancellation of religious services did not prevent the plaintiff from practicing his religion in other ways and, further, the events were isolated occurrences, and not a systematic problem or policy of denying religious services).

Here, defendants do not dispute that plaintiffs' religious beliefs are sincerely held. Plaintiffs claim that Jumm'ah is a Friday group prayer that is "obligatory" and "cannot be performed at any other time."  Compl. at 5.  In opposition to defendants' motion, Scott

8

provided a copy of his grievance, filed on December 26, 2015, regarding the cancellation of Jumm'ah services. Dkt. No. 38 at 13. Scott complained that the service was improperly canceled due to the fact that it "fell on Christmas day." Id. In response, the Inmate Grievance Committee conceded that inmates should have been allowed to attend Jumm'ah services, regardless of the fact that it was a holiday. Id. at 15. The grievance response was affirmed by Uhler on appeal.[6] Id. at 17. Scott argues that "the grievance committee conceded that it was in fact a violation of our rights." Compl. at 1.

Despite these conclusory assertions, the facts do not suggest that defendants' refusal to allow plaintiffs to attend Jumm'ah services, for one day, violated plaintiffs' constitutional rights. Plaintiffs have failed to plead facts suggesting that defendants created a substantial burden on their religion or that defendants prevented plaintiffs, in other ways, from practicing their religion. The isolated incident on December 25, 2015 does not give rise to a constitutional violation. See Boomer v. Irvin, 963 F.Supp. 227, 230-31 (W.D.N.Y. 1997) (holding that the inability to attend Jumm'ah service on one day did not violate the plaintiff's constitutional rights); see also Powell v. City of New York, No. 14-CV-9937, 2016 WL 4159897, at *5 (S.D.N.Y. July 14, 2016) (holding that missing two consecutive Jumm'ah services was a de minimis deprivation).

In opposition to defendants' motion, Scott also contends that defendants failed to allege any legitimate penological objective for canceling Jumm'ah services. Dkt. No. 38 at 7. Because Plaintiffs failed to sufficiently plead that they suffered a substantial burden on their religious beliefs, defendants are not obligated to demonstrate legitimate penological

---

[6] A copy of the IGRC response and Uhler's decision were also annexed to Scott's opposition. Dkt. No. 38 at 15-17.

9

interests. See Jean-Laurent, 2015 WL 1015383, at *6 ("Before considering the balance between the restrictions posed by a prison regulation on an inmate's constitutional rights and the legitimate penological interest advanced by the same regulation, however, the inmate plaintiff must establish that his exercise of some constitutional right was substantially burdened.").

Accordingly, the undersigned recommends that defendants' motion to dismiss be granted on this ground.

### C. Due Process[7]

The Due Process Clause of the Fourteenth Amendment states that "[n]o State shall ... deprive any person of life, liberty, or property without due process of law." U.S. CONST. amend. XIV § 1. It is important to emphasize that due process "does not protect against all deprivations of liberty. It protects only against deprivations of liberty accomplished without due process of the law." Baker v. McCollan, 443 U.S. 137, 145 (1979) (internal quotation and citations omitted).

As a threshold matter, an inmate asserting a violation of his or her right to due process must establish the existence of a protected interest in life, liberty, or property. See Perry v. McDonald, 280 F.3d 159, 173 (2d Cir. 2001). This standard requires a prisoner to establish that the deprivation was an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir.1999) (citation omitted); Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir.1996).

The deprivation of access to communal religious services has been held not to rise to a

---

[7] Scott did not respond to this portion of defendants' motion. See Dkt. No. 38 at 8.

level of "atypical and significant hardship." Arce v. Walker, 139 F.3d 329, 332 (2d Cir. 1998); see also Valentino v. Jacobson, No. 97 Civ. 7615, 1999 WL 14685, at *3 (S.D.N.Y. Jan 15, 1999) (holding that the plaintiff's twelve-day segregation without access to religious services was not atypical in comparison with the ordinary incidents of prison life).

### 1. Procedural Due Process Claim

Even assuming arguendo that plaintiffs have plead a protected liberty interest, they have failed to demonstrate that such deprivation occurred without due process of law. "[P]rocedural due process questions [are analyzed] in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." See Valmonte v. Bane, 18 F.3d 992, 998 (2d Cir.1994) (citing Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989)). Here, plaintiffs have not presented any facts suggesting how defendants violated the procedural process requirements of the Fourteenth Amendment. Accordingly, plaintiffs have failed to state an actionable procedural due process claim.

### 2. Substantive Due Process Claim

Even assuming plaintiffs have a protected interest in attending religious services, plaintiffs' substantive due process claim is subject to dismissal. "Substantive due process protects individuals against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense ... but not against government action that is 'incorrect or

11

ill-advised.'" Lowrance v. Achtyl, 20 F.3d 529, 537 (2d Cir.1994) (internal citations omitted). "To establish a violation of substantive due process rights, a plaintiff must demonstrate that the state action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" Okin v. Villiage of Cornwall–On–Hudson Police Dep't, 577 F.3d 415, 431 (2d Cir. 2009) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 847 n. 8, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)). As already observed by the Northern District of New York, "[v]ery few conditions of prison life are 'shocking' enough to violate a prisoner's right to substantive due process. In Sandin v. Conner, the Supreme Court provided only two examples: the transfer to a mental hospital and the involuntary administration of psychotropic drugs." Samms v. Fischer, No. 10–CV–349 (GTS/GHL), 2011 WL 3876528, at *12 (N.D.N.Y. Mar. 25, 2011) (citations omitted).

Plaintiffs claim that they were deprived of the right to attend religious services for one day. Plaintiffs have not pled facts suggesting that defendants acted in a manner that was "shocking" in a constitutional sense. Morever, plaintiffs' substantive due process claim must be dismissed on the additional ground that it is duplicative of plaintiff's First Amendment Free Exercise Claim. See Rother v. NYS Dep't of Corrs. and Cmty. Supervision, 970 F.Supp. 2d 78, 100 (N.D.N.Y. 2013) ("[S]ubstantive-due-process claims must be dismissed where they are 'merely duplicative of claims explicitly protected under other constitutional sources.' ") (quoting Roman v. Velleca, No. 3:11cv1867(VLB), 2012 WL 4445475, *10 (D. Conn. Sept. 25, 2012)).

### D. Equal Protection Claim

The Fourteenth Amendment's Equal Protection Clause mandates equal treatment

12

under the law. Essential to that protection is the guarantee that similarly situated persons be treated equally. City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). "In order to establish an equal protection violation, the plaintiffs must show that they were treated differently than other people in similar circumstances and must establish that such unequal treatment was the result of intentional and purposeful discrimination." Chaney v. Koupash, No. 04-CV-0126 (LEK/DRH), 2008 WL 5423419, at *20 (N.D.N.Y. Dec. 30, 2008) (citation omitted). In addition, a valid equal protection claim may be brought by a "class of one" "where the plaintiff alleges that she [or he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

Here, plaintiffs allege, in conclusory fashion, that defendants violated their equal protection rights. Plaintiffs failed to identify any similar situated inmates who were treated differently based upon their religious beliefs. Accordingly, the Court recommends that defendants' motion to dismiss on this ground be granted. See Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005) ("[t]o prove a violation of the Equal Protection Clause . . . a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional discrimination").

### E. Leave to Amend

Ordinarily, a court should not dismiss a complaint filed by a pro se litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." Branum v. Clark, 927 F.2d 698, 704–05 (2d Cir. 1991) (citing inter alia Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when

13

justice so requires")); see also Mathon v. Marine Midland Bank, N.A., 875 F.Supp. 986, 1003 (E.D.N.Y. 1995) (permitting leave to replead granted where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy").  Due to the existing questions of fact and need for more specific information, it is recommended that plaintiffs be granted leave to amend in order to attempt to plead facts supportive of their claims.

In formulating a new, amended complaint, plaintiffs are advised that the law in this Circuit clearly provides that "'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.'" Hunt v. Budd, 895 F.Supp. 35, 38 (N.D.N.Y. 1995) (internal quotations admitted).  In the amended complaint, plaintiffs must clearly set forth the facts that give rise to the claims.

### III.  Conclusion

**WHEREFORE**, based on the findings set forth above, it is hereby:

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 35) plaintiffs' complaint (Dkt. No. 1) be **GRANTED**; and it is further

**RECOMMENDED**, that if this Report-Recommendation and Order is adopted, plaintiffs be given thirty (30) days from any such order allowing for an opportunity to amend the complaint; and it is further

**ORDERED**, that copies of this Report-Recommendation and Order be served on the parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1( c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

Dated: February 8, 2017
        Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge