**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

JAMES N. SCOTT,

                Plaintiff,

    v.                                    No. 9:16-CV-403 (TJM/CFH)

D. UHLER; et al.,

                Defendants.

---

**APPEARANCES:**                          **OF COUNSEL:**

JAMES N. SCOTT
96-A-5363
Attica Correctional Facility
Box 149
Attica, New York 14011
Plaintiff pro se

Attorney General for the              RYAN W. HICKEY, ESQ.
State of New York                      Assistant Attorney General
The Capitol
Albany, New York 12224-0341
Attorneys for Defendants

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[1]

Plaintiff pro se N. Scott ("Scott"), an inmate who was, at all relevant times, in the custody of the New York Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to the Civil Rights Act, 42 U.S.C. § 1983. Dkt. No. 55 ("Am. Compl."). Scott contends that defendants Superintendent D. Uhler ("Uhler"), Deputy Superintendent J. Fitchette ("Fitchette") and Lieutenant W. Trombly ("Trombly")

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

deprived him of his constitutional rights under the First and Fourteenth Amendments. See id. For the reasons that follow, it is recommended that defendants' Motion to Dismiss be granted in part and denied in part.

## I.  BACKGROUND

### A.  Procedural History

On April 8, 2016, Scott, and eight additional pro se plaintiffs, commenced this action with the filing of a pro se civil rights Complaint. Dkt. No. 1. In a Decision and Order filed on April 15, 2016, the Court reviewed the Complaint in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A, and directed defendants to respond to the First and Fourteenth Amendment claims. Dkt. No. 20. On July 25, 2016, in lieu of an answer, defendants moved, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6), to dismiss the Complaint. Dkt. No. 45. Scott opposed the motion. Dkt. Nos. 38, 40.

In a Report-Recommendation and Order filed on February 8, 2017 (the "February Order"), the undersigned recommended granting Defendants' motion to dismiss and affording plaintiffs the opportunity to amend the Complaint within thirty days. Dkt. No. 47. On March 17, 2017, the Report-Recommendation and Order was adopted in its entirety. Dkt. No. 52. On April 6, 2017, Scott filed an Amended Complaint. Dkt. No. 55. On September 26, 2017, the Court issued an Order dismissing the claims asserted by the remaining plaintiffs, with prejudice and terminating from the action all plaintiffs other than

Scott.[2]  Dkt. No. 56.  In lieu of an Answer, defendants filed a motion to dismiss the Amended Complaint.  Dkt. No. 60.   Scott opposed the motion.  Dkt. No. 62.

### B.  Facts

The facts are related herein in the light most favorable to Scott as the non-moving party.  See subsection II(A) infra.  At the relevant time, Scott was confined at Upstate Correctional Facility ("Upstate C.F.").  See Am. Compl., generally.  On December 25, 2015, Scott and other Muslim inmates were not permitted to attend regularly-scheduled Jumm'ah services at Upstate C.F.[3]  Id. at 4.[4]  Scott, the designated "inmate facilitator of the Islamic Religion" at Upstate C.F., asked to speak with the Sergeant about the Jumm'ah services, but his request was denied.  Id. at 5.  The Muslim inmates were told only that staff needed to "check and inquire as to how the procedures were going to take place on such a specific day[,]" but no officer ever "returned to the plaintiffs to inform them if they would be permitted to attend these services."  Id. at 4.  Defendant J. Fitchette made the decision to cancel "all programs" after morning recreation, including Jumm'ah services.  Am. Compl. at 5, 7.  When Imam Qubaisy arrived at Upstate C.F. to perform the Jumm'ah service on December 25, 2015, defendant W. Trombly refused him entry into the facility.  Id. at 8.  Trombly

---

[2]  Although plaintiff Scott's Amended Complaint repeatedly references "plaintiffs," plaintiff Scott is advised that **he is the only remaining plaintiff in this action** due to the September 26, 2017 Order dismissing all other plaintiffs from the action with prejudice "because none of the plaintiffs other than James N. Scott filed an amended complaint or sought an extension of time to do so[.]".  Dkt. No. 56.

[3]  Jumm'ah is a weekly group prayer that is obligatory for Muslims, and is the only Muslim congregational service of the week at Upstate C.F.  Am. Compl. at 5. Jumm'ah services are regularly scheduled at noon on Friday for general population inmates.  Id.

[4]  Throughout this Report-Recommendation and Order, references to page numbers in items that appear on the docket refer to the pagination of the header numbers generated by CM/ECF, not to the page numbers used by the parties in the individual documents.

3

informed Imam Qubaisy that Fitchette cancelled services with approval from defendant D. Uhler. Id. Scott seeks declaratory, injunctive, and monetary relief. See id. at 10.

## II. DISCUSSION[5]

Scott alleges that: (1) defendants violated his First Amendment right to religious freedom; and (2) defendants violated his Fourteenth Amendment rights to due process and equal protection. See Am. Compl., generally. Defendants move to dismiss the Amended Complaint, arguing that Scott's First and Fourteenth Amendment claims fail to state a cause of action. See Dkt. No. 60, generally.

### A. Legal Standard

When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994). However, this "tenet . . . is inapplicable to legal conclusions[; thus, t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (holding that "entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . [as] courts are not bound to accept as true a legal conclusion couched as a factual allegation.")).

To defeat a motion to dismiss or a motion for judgment on the pleadings, a claim must

---

[5] All unpublished opinions cited to by the Court in this Report-Recommendation and Order have been, unless otherwise noted, provided to plaintiff.

include "facial plausibility . . . that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556 (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct] .")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that, "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . .") (citations omitted).

Still, "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Twombly, 550 U.S. at 555 (citations omitted). While a complaint attacked under the standard set forth in Rule 12(b)(6) does not require detailed factual allegations, "a plaintiffs obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citations omitted).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations or arguments that the submissions themselves do not suggest that we should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party from compliance with relevant rules of procedural and

5

> substantive law[.]

Id. at 477 (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, . . . a court is obliged to construe his pleadings liberally.") (internal citations omitted).

## B. Religious Claims

Scott claims that defendants violated his religious rights in violation of the First Amendment when they prevented him from attending Jumm'ah services on December 25, 2015. See Am. Compl., generally. Defendants argue that Scott's religious claims are subject to dismissal because precluding him from attending one religious service did not amount to a substantial burden on his religious beliefs. Dkt. No. 60 at 3-5.

The law pertaining to First Amendment religious claims was discussed in the February 8, 2017 Report-Recommendation & Order and will not be restated herein. Dkt. No. 47 at 6-8. In the February 2018 Report-Recommendation & Order, the Court dismissed Scott's First Amendment claims holding:

> . . . the facts do not suggest that defendants' refusal to allow Plaintiffs to attend Jumm'ah services, for one day, violated Plaintiffs' constitutional rights. Plaintiffs have failed to plead facts suggesting that defendants created a substantial burden on their religion or that defendants prevented Plaintiffs, in other ways, from practicing their religion. The isolated incident on December 25, 2015 does not give rise to a constitutional violation. See Boomer v. Irvin, 963 F.Supp. 227, 230-31 (W.D.N.Y. 1997) (holding that the inability to attend Jumm'ah service on one day did not violate the plaintiff's constitutional rights); see also Powell v. City of New York, No. 14-CV-9937, 2016 WL 4159897, at *5 (S.D.N.Y. July 14, 2016) (holding that missing two consecutive Jumm'ah

> services was a de minimis deprivation).

Dkt. No. 47 at 9.

The Court also addressed Scott's argument that the Motion to Dismiss should be denied because defendants failed to state any legitimate penological objective for canceling Jumm'ah services. The Court held:

> "[b]ecause Plaintiffs failed to sufficiently plead that they suffered a substantial burden on their religious beliefs, defendants are not obligated to demonstrate legitimate penological interests. See Jean-Laurent, 2015 WL 1015383, at *6 ("Before considering the balance between the restrictions posed by a prison regulation on an inmate's constitutional rights and the legitimate penological interest advanced by the same regulation, however, the inmate plaintiff must establish that his exercise of some constitutional right was substantially burdened.").

Dkt. No. 47 at 9-10.

After careful review of the Amended Complaint, it is clear that Scott has not cured the defects identified in the February 8, 2017 Report-Recommendation & Order, adopted by this Court on May 17, 2017 as to his First Amendment claim. Dkt. Nos. 47, 52. Accordingly, for the reasons previously stated in the February 8, 2017 Report-Recommendation & Order, it is recommended that Scott's First Amendment cause of action be dismissed. See Tafari v. McCarthy, 714 F. Supp. 2d 317, 339 (N.D.N.Y.2010) (explaining that even where the plaintiff is pro se "an opportunity to amend is not required where the plaintiff has already amended the complaint [or] . . . where the problem with the plaintiff's causes of action is substantive such that better pleading will not cure it.") (internal punctuation marks and quotations omitted).

7

## C. Due Process

Defendants argue that the Amended Complaint reiterates the conclusory due process allegations from the original Complaint, and, thus, the claims are subject to dismissal. Dkt. No. 60-1 at 6. The law pertaining to Fourteenth Amendment Due Process was discussed in the February Order and will not be restated herein. Dkt. No. 47 at 10-12. In the February 8, 2017 Report-Recommendation & Order, the undersigned concluded that Scott failed to plead facts suggesting that deprivation of access to religious services was an atypical or significant hardship. Id. at 10-11. The undersigned further noted that even assuming that Scott pleaded a protected liberty interest, the Complaint did not include facts explaining how Defendants violated the procedural process requirements of the Fourteenth Amendment. Dkt. No. 47 at 11. The Court also dismissed any potential substantive due process claim holding:

> Plaintiffs have not plead facts suggesting that defendants acted in a manner that was "shocking" in a constitutional sense. Morever, Plaintiffs' substantive due process claim must be dismissed on the additional ground that it is duplicative of Plaintiff's First Amendment free exercise claim. See Rother v. NYS Dep't of Corrs. and Cmty. Supervision, 970 F. Supp. 2d 78, 100 (N.D.N.Y. 2013) ("[S]ubstantive-due-process claims must be dismissed where they are 'merely duplicative of claims explicitly protected under other constitutional sources.' ") (quoting Roman v. Velleca, 2012 WL 4445475, *10 (D. Conn. Sept. 25, 2012)).

Dkt. No. 47 at 12.

Despite being afforded the opportunity to amend the Complaint, Scott has failed to plead facts to cure the deficiencies in the prior pleading in this regard. For the reasons set forth in the February 8, 2017 Report-Recommendation & Order, it is recommended that Scott's Fourteenth Amendment Due Process claims be dismissed.

**D. Equal Protection**

In the February 8, 2017 Report-Recommendation & Order, adopted by the Court in the March 17, 2017 Decision & Order, the undersigned dismissed Scott's Equal Protection claims holding:

> . . . Plaintiffs allege, in conclusory fashion, that defendants violated their equal protection rights. Plaintiffs failed to identify any similarly situated inmates who were treated differently based upon their religious beliefs. Accordingly, defendants' motion to dismiss on this ground should be granted. See Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005) ("[t]o prove a violation of the Equal Protection Clause . . . a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional discrimination").

Dkt. No. 47 at 13.

"To establish an equal protection cause of action, a plaintiff must prove that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination directed at an identifiable or suspect class." Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995). If a court finds such discrimination, "the reasonableness of the prison rules and policies must be examined to determine whether distinctions made between religious groups in prison are reasonably related to legitimate penological interests." Benjamin v. Coughlin, 905 F.2d 571, 574 (2d Cir. 1990).

In the Amended Complaint, Scott alleges:

> It is interesting to note that the Catholic Priest was allowed to perform his Ash Wednesday and Palm Sunday Services, also Chaplain Smith was allowed to perform his services for the Christians, but the Muslims was [sic] denied their services.
>
> An inference of discrimination may be found where the plaintiffs is [sic] treated less favorably than similarly situated group not in the plaintiff's protected group or class.

9

Am. Compl. at 4, 9, 19. Plaintiff also states that defendant Fichette "implemented a policy cancelling all programs after the morning rec. run, this cancellation included Jummu'ah services." Id. at 5.

Defendants claim that Scott's allegations pertain to "services on other occasions at other times of the year," and that whether inmates of other faiths were permitted to attend religious services at other times of the year is not relevant because those inmates would not be similarly situated to plaintiff. Dkt. No. 60-1 at 9, n.5. Further, defendants argue that plaintiff has not alleged that he was treated differently from similarly-situated inmates because his Amended Complaint indicates that "all programs" were cancelled after morning recreation, not just Jummu'ah services. Id. at 9.

At this juncture, drawing all reasonable inferences in Scott's favor as the nonmoving party and construing the Amended Complaint liberally under the special solicitude due to the pro se plaintiff, the Court declines to adopt defendants' constrictive interpretation. See Barnes v. Ross, 926 F. Supp. 2d 499, 507 (S.D.N.Y. 2013) ("It may be that the facts are not as [the plaintiff] has pleaded - [. . . ] - but that is not the question currently before the Court on defendants' motion to dismiss."). Although plaintiff states that defendant Fichette "cancell[ed] *all programs* after the morning rec. run, this cancellation included Jummu'ah," it is arguable under these facts that Jummu'ah was the only religious service cancelled, as it is possible that other inmates attended their religious services earlier in the day on December 25, 2015. Compl. at 5. Although defendants argue that it is not relevant if inmates of other faiths were permitted to attend services on days other than December 25, 2015, a fair reading of plaintiff's Amended Complaint suggests that inmates of Christian

10

faith were permitted to attend services on December 25.  See Am. Compl. at 4 (" . . . also Chaplain Smith was allowed to perform his services for the Christians, but the Muslims was [sic] denied their services.").  Based on the facts provided, and in absence of any affidavits or other evidence from defendants supporting otherwise, it cannot be said that no reasonable fact-finder could conclude that plaintiff was treated differently from other similarly-situated inmates if inmates of other faiths were permitted to attend religious services on December 25, 2015.

Upon review of the Amended Complaint, the Court finds that Scott has sufficiently alleged a claim of discrimination in violation of the Equal Protection clause with facts suggesting that similarly-situated inmates were permitted to attend religious services on December 25, 2015 while Muslim inmates intentionally were denied the right to hold and attend services.  See, e.g., Guillory v. Fischer, No. 9:12-CV-00280 (LEK), 2013 WL 1294626, at *16 (N.D.N.Y. Mar. 7, 2013), report and recommendation adopted, 2013 WL 1293821 (N.D.N.Y. Mar. 28, 2013) (finding that the plaintiff sufficiently pleaded an equal protection claim based upon the denial of Jewish services on one day because "Jewish, Muslim, Catholic and Protestant inmates are similarly situated in that they are all religious groups seeking to utilize prison facilities to hold religious services, and Plaintiff alleges that the Defendants facilitated the use of prison facilities for all of the other religious groups except the Jewish inmates for purely discriminatory reasons."); Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir.1995) ("To prove an equal protection violation, claimants must prove purposeful discrimination directed at an identifiable or suspect class.").  Although it may be the case that Christian inmates were not permitted to attend services on December 25, 2015, based on the record presently before the Court, this allegation, *if proven true*,

11

could arguably state an Equal Protection violation.

Because Scott has sufficiently pleaded that he was similarly situated to other prison groups, yet treated differently, dismissal is appropriate only if defendants can show that the decision to cancel Jumm'ah services was "reasonably related to legitimate penological interests."  Defendants do not offer in their Motion to Dismiss any explanation or rational basis to justify the decision to cancel Jumm'ah services.  See Panayoty v. Annuci, 898 F. Supp.2d 469, 488 (N.D.N.Y. 20120) (noing that, even where a plaintiff can prove that two groups are similarly situated, the different treatment could be warranted if the defendant can demonstrate that the distinctions are reasonably related to legitimate penological interests); Dkt. No. 60.  At this juncture, Scott has adequately pleaded an Equal Protection claim to withstand a motion to dismiss.  Accordingly, it is recommended that defendants' motion be denied on this ground.

### III.  Conclusion

**WHEREFORE**, based on the findings set forth above, it is hereby:

**RECOMMENDED**, that Defendants' motion to dismiss based upon Fed. R. Civ. P. 12(b)(6) (Dkt. No. 60) be:

1. **GRANTED**, as to Scott's First Amendment claims;

2. **GRANTED**, as to Scott's Fourteenth Amendment Due Process claims; and

3. **DENIED**, as to Scott's Fourteenth Amendment Equal Protection claims; and it is further

**ORDERED**, that copies of this Report-Recommendation and Order be served on the

parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1( c), the parties have **fourteen** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  See Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

**IT IS SO ORDERED**.

Dated: May 24, 2018
       Albany, New York

Christian F. Hummel
U.S. Magistrate Judge