UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JAMES N. SCOTT,

                           Plaintiff,

     v.                                                    No. 9:16-CV-403
                                                                 (TJM/CFH)

D. UHLER; et al.,

                           Defendants.

---

**APPEARANCES:**                                   **OF COUNSEL:**

JAMES N. SCOTT
96-A-5363
Plaintiff <u>Pro Se</u>
Great Meadow Correctional Facility
Box 51
Comstock, New York 12821

HON. LETITIA JAMES
Attorney General for the                       RYAN W. HICKEY, ESQ.
State of New York                                 Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

    Plaintiff James N. Scott ("Scott"), an inmate who was at all relevant times in the custody of the New York State Department of Correction and Community Supervisions ("DOCCS"), brings this action pursuant to the Civil Rights Act, 42 U.S.C. § 1983. Dkt.

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c)

No. 1 ("Compl."); Dkt. No. 55 ("Am. Compl."). Scott contends that defendants deprived him of his constitutional rights under the Fourteenth Amendment. See Am. Compl. Defendants move, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56, to dismiss the amended complaint. Dkt. No. 72. Scott opposes defendants' motion. Dkt. No. 74. For the following reasons, it is recommended that defendants' motion be granted, and plaintiff's amended complaint be dismissed it its entirety without prejudice.

## I. BACKGROUND

### A. Procedural History

On April 8, 2016, Scott and eight other inmates, commenced this action with the filing of a pro se civil rights complaint. See generally Compl. In a Decision and Order filed on April 15, 2016, the Court reviewed the complaint in accordance with 28 U.S.C § 1915(e)(2)(B) and 28 U.S.C. § 1915A, and directed defendants to respond to the First and Fourteenth Amendment claims. Dkt. No. 20. On July 25, 2016, in lieu of an answer, defendants moved, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the complaint. Dkt. No. 35. Scott opposed the motion. Dkt. No. 38, 40.

In a Report-Recommendation and Order filed on February 8, 2017, the undersigned recommended granting defendants' Motion to Dismiss and affording plaintiffs the opportunity to amend the complaint within thirty days. Dkt. No. 47. On March 17, 2017, Judge McAvoy adopted the Report-Recommendation and Order in its entirety. Dkt. No. 52. On April 12, 2017, Scott filed an amended complaint. Am. Compl. On September 26, 2017, the Court issued an Order dismissing the claims asserted by the remaining plaintiffs with prejudice, and terminating from the action all

plaintiffs other than Scott.² Dkt. No. 56. In lieu of an answer to the amended complaint, defendants filed a Motion to Dismiss. Dkt. No. 60. Scott opposed. Dkt. No. 62.

In a Report-Recommendation and Order filed on May 24, 2018, the undersigned recommended (1) granting defendants' Motion to Dismiss insofar as dismissing Scott's First Amendment and Fourteenth Amendment Due Process claims, and (2) denying defendants' Motion to Dismiss insofar as dismissing Scott's Fourteenth Amendment Equal Protection claims. Dkt. No. 63. On June 25, 2018, Judge McAvoy adopted the Report-Recommendation and Order in its entirety. Dkt. No. 65. On March 11, 2019, defendants filed a Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56(a), seeking dismissal of Scott's remaining Fourteenth Amendment Equal Protection claims Dkt. No. 72. Scott opposed the motion. Dkt. No. 74.

### B. Facts³

---

² Although plaintiff Scott's Amended Complaint repeatedly references "plaintiffs," plaintiff Scott is the only remaining plaintiff in this action. The September 26, 2017, Order dismissed all other plaintiffs from this action with prejudice "because none of the plaintiffs other than James N. Scott filed an amended complaint or sought an extension of time to do so[.]" Dkt. No. 56.

³ In support of this motion, defendant filed a Statement of Material Facts. Local Rule 7.1 (a)(3) states:

> Summary Judgment Motions
>
> Any motion for summary judgment shall contain a Statement of Material Facts. The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits.
>
> The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that

The facts are related herein in the light most favorable to Scott as the non-moving party.  See subsection II(A) infra.  At the relevant time, Scott was confined at Upstate Correctional Facility ("Upstate C.F.").  See generally Am. Compl.  On December 25, 2015, Scott and other Muslim inmates were not permitted to attend a regularly-scheduled Jumm'ah service at Upstate C.F.  Id. at 4.[4]  A request from Scott, the designated "inmate facilitator of the Islamic Religion" at Upstate C.F., to speak with the sergeant in command of the block went unanswered by correction staff.  Id. at 5.  Scott and other Muslim inmates were told that staff needed to "check and inquire as to how the procedures were going to take place on such a specific day[,]" but no officer "returned to the plaintiffs to inform them if they would be permitted to attend these services."  Id. at 4.  Defendant J. Fitchette ("Fitchette") was the Deputy Superintendent for Programs and responsible for "running the programs on Christmas day."  Id. at 5, 7.  Fitchette made the decision to cancel "all programs" after morning recreation, including Jumm'ah services.  Id. at 8.  When Imam Qubaisy arrived at Upstate C.F. on December 25, 2015, to perform the Jumm'ah service, defendant Lieutenant W. Trombly ("Trombly"), the watch commander, refused him entry into the facility.  Id. at 8.  Trombly informed Imam Qubaisy that Fitchette cancelled services with approval from defendant Superintendent D. Uhler ("Uhler").  Id.

---

the non-movant contends are in dispute.  Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.

N.D.N.Y. L.R. 7.1 (a)(3).

[4] Throughout this Report-Recommendation and Order, references to page numbers in items that appear on the docket refer to the pagination of the header numbers generated by CM/ECF, not to the page numbers used by the parties in the individual documents.

On December 26, 2015, Scott submitted inmate grievance UST 57414-16. Dkt. No. 68 at 5. Scott complained that Muslim inmates were prohibited from holding their weekly Jumm'ah service on December 25, 2015. Id. On January 5, 2016, Upstate's Inmate Grievance Resolution Committee ("IGRC") issued its response, finding that Scott and the other consolidated grievants "were correct in saying that they should [have been] allowed to attend Jumm'ah services on 12/25/15 regardless [if] [it] was a holiday or not." Id. at 7. The response also stated, "corrective action [was] taken and the 12 building sergeant has been notified to make sure this doesn't happen again in the future." Id. Scott received IGRC's response on January 5, 2016, and appealed the decision that day. Id. On January 21, 2016, Superintendent Uhler upheld IGRC's decision. Id. at 9. On January 22, 2016, Scott appealed Superintendent Uhler's decision to the Central Office Review Committee ("CORC").[5] Id. The CORC received Scott's appeal on February 11, 2016. Id. at 13.

On April 1, 2016, Scott commenced this action. Compl. at 7. On April 14, 2016, Scott wrote to the IGRC, checking on his appeal. Dkt. No. 68 at 11. On April 18, 2016, Scott again wrote to CORC, checking on his appeal. Id. at 12. On April 25, 2016, CORC responded, confirming it received Scott's appeal on February 11, 2016. Id. at 13. On May 18, 2016, CORC issued its decision upholding the Superintendent's determination. Dkt. No. 72-4 at 2; Dkt. No. 74-1 at 6.

---

[5] Both Scott and the three defendants assert that Scott appealed the Superintendent's decision to CORC on January 22, 2016. Dkt. No. 74-1 at 6, Dkt. No. 72-2 at ¶ 7. Two separate versions of Scott's appeal were submitted to the Court. One version has Scott's signature and is dated January 22, 2016, (Dkt. No. 72-4 at 17), and the other has Scott's signature and is dated January 25, 2016. Dkt. No. 68 at 9. The CORC file states that Scott brought his appeal on January 25, 2016. Dkt. No. 72-4 at 3. Scott says he brought his appeal on January 25, 2016, in a letter he wrote to the IGRC on April 14, 2016. Dkt. No. 68 at 11. The three-day difference in dates is not dispositive in this analysis but is noted.

## II. LEGAL STANDARDS [6]

### A. Summary Judgment

"A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the burden of showing the basis for its motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party satisfies this burden by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that show an absence of a genuine issue of material fact. Id. There is a genuine issue of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "In determining whether summary judgment is appropriate, [the Court will] resolve all ambiguities and draw all reasonable inferences against the moving party." Skuble v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

A non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (internal quotation marks omitted). Instead, a non-moving party must support his or her assertions with evidence showing a genuine issue of material fact. See id. at 586. Even where a complaint or affidavit contains specific assertions, the allegations "may still be deemed conclusory if [they are] (1) 'largely unsubstantiated by any other direct evidence' and (2) 'so replete with inconsistencies and improbabilities that no reasonable juror would undertake the

---

[6] All unpublished opinions cited to by the Court in this Report-Recommendation & Order, unless otherwise noted, have been provided to plaintiff.

suspension of disbelief necessary to credit the allegations made in the complaint.'" Smith v. Woods, 9:03-CV-480 (DNH), 2006 WL 1133247, at *3 & n.11 (N.D.N.Y. Apr. 24, 2006) (quoting Jeffreys v. City of New York, 426 F.3d 549, 554-55 (2d Cir. 2005)) (additional citations omitted). "When no rational jury could find in favor of the non-moving party because the evidence to support is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Services, Ltd. P'ship, 22 F.3d 1219, 1224 (2d. Cir. 1994).

In determining a summary judgment motion, "[f]actual disputes that are irrelevant or unnecessary will not be counted." Liberty Lobby, 477 U.S. at 247. The nonmovant "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Id. at 257. "Mere conclusory statements or reliance on the pleadings, . . . will not suffice, . . . ." Celotex, 477 U.S. at 324. The court must look to the substantive law to identify which facts are material. Liberty Lobby, 477 U.S. at 248.

When, as here, a party seeks judgment against a pro se litigant, a court must afford a non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). The Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally," . . . and that such submissions must be read to raise the strongest arguments that they "suggest," . . . . At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . . or arguments that the submissions themselves do not "suggest," . . . that we should not "excuse frivolous or vexatious filings by pro se litigants," . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law . . .

Triestman, 470 F.3d at 477 (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

### B. Exhaustion

The Prison Litigation Reform Act of 1995 ("PLRA"), which governs federal civil rights litigation by inmates, states, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The exhaustion requirement also applies where the prisoner seeks relief not available in the administrative grievance process, such as monetary damages. Id. at 524. To satisfy the exhaustion requirement the inmate must "complete the administrative review process in accordance with the applicable procedural rules." Woodford v. Ngo, 548 U.S. 81, 88 (2006); see also Jones v. Bock, 549 U.S. 199, 218 (2007).

Although the Supreme Court of the United States has deemed exhaustion mandatory, courts must consider the PLRA's "textual exception to mandatory exhaustion." Ross v. Blake, __U.S. __, 136 S.Ct. 1850, 1858 (2016). With this exception, courts must consider if administrative remedies were "available" to a prisoner. Id. The Supreme Court identified three circumstances where administrative remedies may be unavailable to a prisoner. Id. at 1859. First, "an administrative

procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. (citing Booth v. Churner, 532 U.S. 731, 736, 738 (2001)). Second, "[a]n administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Third, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

### III. DISCUSSION

Scott alleges that defendants violated his Fourteenth Amendment right to equal protection of the laws. See generally Am. Compl. Defendants move for summary judgment arguing that: (1) Scott "did not exhaust available administrative remedies prior to commencing this action, in violation of the requirements of the Prison Litigation Reform Act ('PLRA')"; and (2) "the record is devoid of any evidence that Scott was treated differently from any similarly situated individual because of intentional and purposeful discrimination." Dkt. No. 72-1 at 3.

#### A. Did Scott Exhaust Administrative Remedies?[7]

---

[7] To exhaust administrative remedies, a DOCCS inmate must first file a complaint with an inmate grievance program ("IGP") clerk within twenty-one days of the alleged incident. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(a)(1). An IGP representative has sixteen calendar days to informally resolve the issue. Id. § 701.5(b)(1). If no informal resolution occurs, the IGRC must hold a hearing within sixteen days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing. Id. §§ 701.5(b)(2)(i)-(ii). If the determination is unfavorable to the inmate, the inmate may appeal the IGRC's determination to the facility superintendent within seven calendar days of receipt of the determination. Id. § 701.5(c)(1). If the superintendent's determination is unfavorable, the inmate may appeal to CORC within seven days after receipt of the superintendent's determination. Id. §§ 701.5(d)(i)-(ii). CORC must "review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the [inmate], the grievance clerk, the superintendent, and

The PLRA requires inmates to exhaust administrative remedies before they can sue in federal court in prison condition cases. People v. Beldock, 212 F. Supp. 2d 141, 142 (W.D.N.Y.2002); see McMillian v. Walters, No. 9:16-CV-0277 (MAD/DJS), 2017 WL 8894737, at *2 (N.D.N.Y. Dec. 18, 2017) ("The defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action.") (citation omitted).

Scott commenced this action on April 1, 2016, with the filing of his complaint.[8] Compl. at 7.  CORC had not issued its decision on Scott's appeal at that time. Id. at 5.  In response to a question on the form complaint asking for the final determination of his grievance Scott wrote, "Central Office in Albany refused to respond." Id.  It is unclear what Scott means by "refused." Id.  There is no indication that Scott reached out to CORC before he commenced this action, and there is no correspondence from CORC denying or dismissing his appeal before April 1, 2016.  See generally Am. Compl.  Scott wrote to CORC on April 18, 2016, and received confirmation that CORC received his appeal on February 11, 2016.  Dkt. No. 68 at 12-13.  Scott first wrote to CORC seventeen days after commencing this lawsuit. Id.; Compl.  CORC denied Scott's appeal on May 18, 2016.  Dkt. No. 72-4 at 2; Dkt. No. 74-1 at 6.

If a prisoner has failed to properly follow each of the applicable steps before commencing litigation, he has failed to exhaust his administrative remedies. Ford v.

---

any direct parties within thirty (30) calendar days from the time the appeal was received." Id. § 701.5(d)(3)(ii).  Parties do not dispute that at all relevant times, DOCCS had a three-step inmate grievance program in place.  N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5.

[8] Plaintiff's complaint is considered filed as of the date it was given to the prison official for forwarding. See Johnson v. Coombe, 156 F. Supp. 2d 273, 277 (S.D.N.Y. 2001); Noble v. Kelly, 246 F.3d 93, 97-98 (2d Cir. 2001).

Smith, No. 9:12-CV-1109 (TJM/TWD), 2014 WL 652933, at *3, (N.D.N.Y. Jan. 16, 2014) (citing Woodford v. Ngo, 548 U.S. 81, 93 (2006)).  Receiving a decision from CORC after filing a federal lawsuit does not satisfy the PLRA's requirement that administrative remedies be exhausted before filing suit, and any such action must be dismissed without prejudice.  Neal v. Goord, 267 F.3d 116, 122-23 (2d Cir. 2001) overruled on other grounds by Porter v. Nussle, 534 U.S. 516 (2002).  Although Scott's April 12, 2017, amended complaint states that the final result of his grievance was that "Central Office in Albany affirmed the determinations," the fact that CORC rendered a decision thirty-eight days after he commenced his federal lawsuit does not excuse him from fully exhausting his administrative remedies before commencing a federal action.  See Dkt. No. 72-4 at 2, Am. Compl.  Scott did not fully exhaust his administrative remedies before commencing this lawsuit on April 1, 2016, as CORC's decision was outstanding at that time.  Dkt. No. 72-4 at 2; Dkt. No. 74-1 at 6.

### B. Availability of Administrative Remedies

Scott argues that the grievance process was unavailable to him because of CORC's delay in rendering its final determination.  See Dkt. No. 74-1 at 11; Compl. at 5.  Courts within this Circuit differ in their analyses of whether CORC's delay constitutes "unavailability" excusing a plaintiff's failure to exhaust his administrative remedies before commencing suit.  Compare Fox v. Lee, No. 9:15-CV-0390 (TJM/CFH), 2018 WL 8576600, at *7 (N.D.N.Y. Dec. 18, 2018) (concluding that CORC's approximate four-month delay in responding to the plaintiff's appeal did not render the grievance process unavailable) and Berkley v. Ware, No. 9:16-CV-1326 (LEK/CFH), 2018 WL 3736791, at

\*6 (N.D.N.Y. July 6, 2018) (concluding "that CORC's approximately five month delay in rendering a decision did not excuse plaintiff from the exhaustion requirement.") with Rodriguez v. Reppert, No.14-CV-671 (RJA/MJR), 2016 WL 11483439, \*1 (W.D.N.Y. Sept. 28, 2016) (concluding that because CORC failed to respond within the 30-day time limit set by regulation, administrative remedies were unavailable to the plaintiff and dismissal for failure to exhaust was not appropriate) and High v. Switz, No. 9:17-CV-1067 (LEK/DJS), 2018 WL 3736794, at \*5 (N.D.N.Y. July 9, 2018), report-recommendation adopted by 2018 WL 3730175 (N.D.N.Y. Aug. 6, 2018) (concluding that administrative remedies were unavailable to the plaintiff after CORC's nearly yearlong delay because "there is no direction on any action a grievant may take if he does not receive a response from CORC"; thus dismissal for failure to exhaust was not appropriate).

The Second Circuit has not addressed the exact issue of "unavailability" where a plaintiff has followed the grievance process and CORC has neglected to respond within the thirty-day time limit. High, 2018 WL 3736794, at \*5 (citing Gizewski v. New York State Dep't of Corr. & Cmty. Supervision, 692 F. App'x 668, 670 (2d Cir. 2017) (summary order); see also Fox, 2018 WL 8576600, at \*7.  However, courts within this Circuit have relied on the circumstances of each case when making this determination. See supra at 11-12.  In High, this Court excused the plaintiff's failure to exhaust his administrative remedies,

> where the plaintiff had taken all steps he could to fulfill the last step of the appeal process; where CORC had neglected to respond, not just during the thirty day time limit, but for a period of numerous months thereafter; where CORC had further neglected to respond when Plaintiff wrote to CORC regarding the status of his appeal; and where CORC had only

>ultimately decided the appeal a year later, after the present [motion] had been filed.

2018 WL 3736794, at *5.  However, in Berkley, this Court determined that, where the plaintiff commenced his federal action before receiving a response from CORC, "CORC's approximately five-month delay in rendering a decision did not excuse plaintiff from the exhaustion requirement."  2018 WL 3736791, at *6.  The Berkley decision noted that the plaintiff had not mentioned the unavailability of the grievance process in his appeal to CORC and did not write to either the IGRC or CORC to check on his appeal before filing a federal lawsuit.  Id.  The length of delay and the plaintiff's attempts to reach out to CORC have been considerations this and other Courts in this Circuit have considered in determining whether administrative remedies were "available" to a plaintiff.  See High, 2018 WL 3736794, at *5; see also Gizewski, 692 F. App'x at 668; Berkley, 2018 WL 3736791, at *6; Hayes v. Dahkle, No. 9:16-CV-1368 (TJM/CFH), 2018 WL 7356343, at *9 (N.D.N.Y. Dec. 11, 2018); Henderson v. Annucci, No. 14-CV-445A, 2016 WL 3039687, at *10 (W.D.N.Y. Mar. 14, 2016).

Here, there is no dispute that Scott filed a grievance with Upstate C.F.'s IGRC on December 26, 2015; received the IGRC's determination on January 5, 2016; appealed the decision that day; received Superintendent Uhler's decision on January 21, 2016; and appealed the decision to CORC on or about January 22, 2016.  See Dkt. No. 68 at 5-9.  CORC received Scott's appeal on February 11, 2016, and issued its final determination on May 18, 2016.  Dkt. No. 68 at 11; Dkt. No. 72-4 at 2.  Scott has not proffered evidence that he wrote Upstate C.F. IGRC or CORC inquiring as to the status of his appeal before filing this lawsuit.  See Compl, Am. Compl., Dkt. No. 68; Berkley, 2018 WL 3736791, Hayes, 2018 WL 7356343.  Additionally, when Scott checked with

CORC he did not demonstrate that the exhaustion process was confusing to him. Id.; see e.g., Giano v. Goord, 380 F.3d 670, 676, 679 (2d Cir. 2004).

Scott also does not mention or provide evidence of CORC sending him a receipt after he filed his appeal. See generally Compl.; Am. Compl. The PLRA states that, "[i]f a grievant does not receive a copy of the written notice of receipt [by CORC] within 45 days of filing an appeal, the grievant should contact the IGP supervisor in writing to confirm that the appeal was filed and transmitted to CORC." 7 N.Y.C.R.R § 701.5(d)(3)(i). Scott offers no evidence that he followed this step of the PLRA. See generally Compl.; Am. Compl. The letters Scott provides were both written after Scott commenced this action and more than forty-five days after he filed his appeal.[9] Dkt. No. 68 at 11,12. The letters also do not characterize the grievance process as unavailable or hard to follow. Id. In fact, in his April 18, 2016, letter to CORC Scott stated he would, "await your response in an effort to resolve this matter." Id. at 12. However, Scott filed a federal lawsuit eighteen days before sending that letter to CORC. Am. Compl; Dkt. No. 68 at 12.

The length of CORC's delay is relatively brief -- approximately two months. See Dkt. No. 72-4 at 30; Am. Compl. The shorter delay Scott experienced is comparable to the delays in cases where this Court concluded that administrative remedies were available to the plaintiffs. See Berkley, 2018 WL 3736791, at *6 (explaining that the relatively short CORC delay did not excuse the plaintiff from the exhaustion

---

[9] As discussed, Scott appealed to CORC on or about January 22, 2016. See supra at note 5. CORC received his appeal on February 11, 2016. Dkt. No. 68 at 13. A grievant should contact the IGP supervisor within forty-five days of filing an appeal if they have not received a receipt from CORC. 7 N.Y.C.R.R § 701.5(d)(3)(i). March 8, 2016 is forty-five days after Scott filed his appeal. Scott's letter to Upstate IGRC is dated April 14, 2016, id. at 11, and his letter to CORC is dated April 18, 2016. Id. at 12. Both letters were written over a month past the forty-five-day period outlined in 7 N.Y.C.R.R § 701.5(d)(3)(i) and over two weeks after Scott filed this lawsuit.

requirement), Hayes, 2018 WL 7356343, at *9 (same); cf. High, 2016 WL 3039687, at *10 (explaining that the relatively long CORC delay, in addition to other factors, did excuse the plaintiff from the exhaustion requirement), Annucci, 2018 WL 3736794, at *4 (same).  Considering the totality of the circumstances, Scott's failure to check with CORC as to the status of his appeal prior to commencing this action, and the relatively short delay in receiving a response from CORC leads the undersigned to conclude that plaintiff has failed to demonstrate that administrative remedies were unavailable to him. Berkley, 2018 WL 3736791, Hayes, 2018 WL 7356343.  Thus, because Scott failed to exhaust his administrative remedies prior to commencing this action, it is recommended that defendants' motion be granted.[10]  It is further recommended that plaintiff's amended complaint be dismissed without prejudice.  Berry v. Kerick, 366 F.3d 85, 87 (2d Cir. 2004) (holding that dismissal without prejudice is appropriate where "a prisoner who brings suit without having exhausted these remedies can cure the defect by simply exhausting them and then reinstituting his suit.").

## IV. CONCLUSION

**WHEREFORE**, for the reasons stated herein, it is hereby

**RECOMMENDED**, that defendant's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 (Dkt. No. 72) be **GRANTED**; and it is further

**RECOMMENDED**, that plaintiff's Amended Complaint (Dkt. No. 55) be **DISMISSED** in its entirety, **without prejudice**, and it is

---

[10] As the undersigned concludes that plaintiff has failed to exhaust his administrative remedies prior to commencing suit or that administrative remedies were unavailable to him, the undersigned declines to reach the merits of the plaintiff's claims.

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72. [11]

Dated: July 31, 2019
Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge

---

[11] If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Id. § 6(a)(1)(C).